WESTON v. MOORE.

1. Taxation—Notice for Reconveyance—Sufficiency.

Sufficient notice for reconveyance is given by one purchaser of tax title of wild lands after having received quitclaim of interest of copurchaser where he serves notice on last grantee of record in chain of title and holder of last preceding tax title, the latter being assignee of grantee in tax deed (1 Comp. Laws 1929, § 3535).

2. Same—Delivery.

Substantial defect in proceedings to perfect title in tax title purchaser is not made by delivery of notices for reconveyance to sheriff on different days for different parties who never demanded reconveyance; nor, when addressed to a corporate party of record, for failure to state it is a corporation, as long as it is actually received by corporation.

3. Same—Service—Title.

Purchaser at tax sale has title such as to enable him to serve notice for reconveyance even though statutory six months' period does not expire until after lands covered therein become State tax lands.

4. Same—Language.

Language of notice for reconveyance stating that delinquent taxes were "paid as a condition of purchase" from State tax land list, although technically inaccurate, is a harmless error where statute governing purchase required purchaser to pay such delinquent taxes (1 Comp. Laws 1929, § 3473).

5. Same—Redemption by Record Owner.

Original record owner is not entitled to redeem from sale for delinquent taxes when description is also purchased from State tax land list for earlier taxes bid in by the State, except by paying amount of bid at sale, 100 per cent. in addition thereto and description fee within six months of service of notice for reconveyance.

6. Same—Sheriff's Return.

    Failure of sheriff's return of service of notice for reconveyance to show service on occupants or nonoccupancy is not defective return as to unoccupied lands so far as parties not of record at time of service of notice are concerned.

7. Same—Excessive Demand.

    Notices of reconveyance are not invalidated where accurate itemized statements of amounts paid were included but totals in notices served varied $3 as result of easily discoverable error in computation.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted October 12, 1933. (Docket No. 82, Calendar No. 37,322.) Decided December 5, 1933.

Bill by Frank Weston against Robert S. Moore and others to quiet title. Edward LeDuc intervened as defendant. Decree for plaintiff. Intervener appeals. Affirmed.

*Albert E. Sharpe,* for plaintiff.

*John W. Shine,* for defendant LeDuc.

Butzel, J. At the annual tax sales of the county treasurer in 1927 and 1928, Frank Weston, plaintiff, purchased tax titles for wild lands in Chippewa county, Michigan. Some of the purchases were made on May 3, 1927, and the others on May 1, 1928. Tax deeds were subsequently issued to him for those descriptions for the years purchased from the State tax land list but not for those taken from the delinquent list. The sales were made on account of the nonpayment of taxes for one or more of the years 1922, 1923, 1924 and 1925. In each instance, the purchaser bought from the State tax land list and also paid taxes found on the delinquent list for the subsequent year, receiving proper certificates

of purchase from the county treasurer showing' such payments.

One C. E. Green was associated with Weston in making the 1927 purchases but, on August 21, 1928, he quitclaimed to plaintiff his entire interest in their joint purchase of tax titles for the years 1922, 1923 and 1924. One week later, Weston executed the statutory six-months' notices for reconveyance and gave them to the sheriff of Chippewa county for service. Because of an error in the notices as to certain of the lands, new notices were delivered to the sheriff in March, 1929, covering a large portion of the properties. The notices were addressed to the Northwestern Timberland Company, the last grantee of record in the chain of title, and to Archie C. Belding, the holder of the last tax titles issued prior to those acquired by Weston.

On March 25, 1930, Weston brought the instant suit against Belding and others to quiet title to the lands. Edmund LeDuc was permitted to intervene as a party defendant and is evidently the only person now contesting plaintiff's claims on appeal. LeDuc claims title through a series of *mesne* conveyances from previous title holders.

(1) Appellant alleges that, prior to the purchases by Weston and Green, Green had been engaged in a similar venture involving these same lands with Belding, named in the notices as an earlier tax-title holder; that they had conveyed in trust to a third party; that Green could not again sell the same interest to Weston; and that, at most, Weston had only obtained Green's interest as *cestui* in the earlier agreement. It is true that there were certain prior transactions between Belding, Green and others but none of them were recorded. As was held by the trial judge, there is insufficient proof of

Weston's having had such knowledge of these transactions as to bind him in any way or make it incumbent upon him to serve notice upon anyone claiming an interest through these dealings. The tax deeds and certificates issued to Weston and Green after the 1927 sale named them both as purchasers. While the record indicates that he was to receive some share in the profits, Green quitclaimed to Weston for the very purpose of vesting the entire title in him. The trial judge was correct in holding that the notices for reconveyance, signed solely by Weston, were sufficient.

(2) Error is claimed in that, in each case, the notices to reconvey addressed to the Northwestern Timberland Company were delivered to the sheriff of Chippewa county for service from one to three days earlier than the notices addressed to Belding. These notices were delivered so close together in point of time that there was no substantial defect in the proceedings. The half-year period runs from the time the notice is served. More than six months passed after service of the notices to Belding before plaintiff asserted his title. It is not claimed that either of the parties on whom the notices were served nor anyone claiming under them attempted to redeem, nor is there any showing that anyone was prejudiced. While it is conceded that all parties are entitled to substantially the same notice and equal opportunity to redeem, we believe that these requirements were met in the instant case. We adopt the rule as set forth in *Williams* v. *Olson,* 141 Mich. 580, in which the court said:

"Unless compelled to do so, courts should not so construe the legislation as to make its provisions mandatory, and, so, applicable only to cases where the returns of service of notice show exact con-

formity with the statute provisions. To do so would not only render the legislation abortive, but would afford the delinquent taxpayer additional security against the collection, by the State, of its revenues.''

(3) Appellant claims that the new tax notices served in March, 1929, were defective because at the time that they were served the lands covered therein had been bid in by the State for the subsequent year's taxes. Inasmuch as the year allowed for redemption from this tax sale had not yet expired, Weston still retained such title as would enable him to serve notice. See *Broadwell* v. *Walker,* 216 Mich. 210. Further, he acquired tax title for the year included in the State bid at the sale in May, 1929.

(4) Further error is alleged by appellant in that the notice described the delinquent taxes as having been paid as a condition of purchase from the State tax land list. 1 Comp. Laws 1929, § 3473, stipulates that, when a description is included on both the State tax land and delinquent lists, a purchaser must buy in the description from both lists. While the language of the notice may have been technically incorrect, the error seems unimportant. *Closser* v. *McBride,* 182 Mich. 594.

(5) It is also the appellant's contention that, inasmuch as the tax notices included the taxes for the years for which purchase from the delinquent list was made and no deeds were issued in exchange for the certificates of purchase received by the appellee for these years, the notices were invalid. In support of their claim, they cite 1 Comp. Laws 1929, § 3535, which provides that, before a purchaser may be entitled to a writ of assistance, he must serve a notice including the statement that ''the undersigned has title * * * under tax deed or deeds issued therefor.'' This declaration was made in the notices but appel-

lant asserts that it was ineffective due to appellee's failure to procure tax deeds for his purchases from the delinquent list. Under our decisions, an original record owner is not entitled to a year's period of redemption from a sale for delinquent taxes when the description is also purchased from the State tax land list for earlier taxes bid in by the State. His sole redress is to pay the amount bid at the sale, adding thereto 100 per cent. and the description fee, within six months of service of the notice for reconveyance. *Grand Haven, etc., Verein* v. *Soule,* 175 Mich. 210. In the instant case, plaintiff had tax deeds for his purchases from the State tax land list. Inasmuch as a 100 per cent. penalty became due immediately upon purchase from the delinquent tax list, we do not believe that defendant had a right to complain because the purchaser did not secure deeds for those years, nor do we believe that the statute requires them in this situation.

(6) Appellant further claims that the service was incomplete because there was no service upon him, the grantee named in the tax deed of record for the latest year's tax. Defendant, prior thereto, had already assigned to Belding, on whom service was made. 1 Comp. Laws 1929, § 3535, states that the service shall be made ''upon the grantee or grantees under the tax deed issued by the auditor general for the latest year's tax then appearing of record in said registry of deeds.'' Belding, defendant's assignee, was properly served. To hold such service insufficient would lead to a ridiculous result. It would mean that the party who no longer has any interest in the property must be served, to the exclusion of those who have acquired his interest.

(7) Appellant further claims that the notice was defective because the sheriff's return failed to show

service on persons in possession or to state that there was no one in possession of the lands on whom service might be made. The proofs showed that, as to one parcel of land, there was a house erected and occupied by fishermen and hunters for a brief space of time each year. The court refused to grant plaintiff relief as to this particular lot or parcel and as to an adjoining piece which plaintiff included in a single statement of the amount paid. The sheriff should have stated in his return that there was no one in possession of the unoccupied parcels of property but, inasmuch as the proofs revealed that the property was unoccupied except in the instance mentioned by the trial judge, we do not believe that the appellant was prejudiced thereby.

(8) In one of the notices delivered to the sheriff for service on Belding, the amount demanded for redemption was incorrectly stated as $64.16. In a duplicate notice served on the Northwestern Timberland Company, the amount was correctly stated as $61.16. An itemized statement of the amounts paid was included in the notices. A simple computation by the recipient would have disclosed an error of $3 in the first notice. We believe the case is ruled by *Rogers* v. *Davison,* 188 Mich. 519, 522. It was, at most, a clerical error easily discovered by checking the figures.

(9) Appellant contends that the tax notices addressed to the ''Northwestern Timberland Co.,'' without stating that the company was a corporation, were fatally defective. This contention has no merit. *Dunn* v. *Peck,* 255 Mich. 391. He also complains that there was no proper service upon the company. Notice was sent by registered mail, as provided by law, and reached the company's offices in Boston, Massachusetts. The return receipt for

one notice was signed "Northwestern Timberland Co., J. W. McLeod." Another was signed "William M. Bullivant, President." The testimony shows beyond any question that the notices reached the company, that Bullivant is president and J. W. McLeod his confidential secretary, possessed of authority to sign receipts for all mail sent Bullivant. The trial judge held that the notices had been properly addressed and sent by registered mail as provided by law, that they had been received by the company, and that the service was sufficient. We agree with him.

The other points raised are without any merit and require no discussion.

The decree of the trial court is affirmed, with costs to plaintiff.

McDONALD, C. J., and WEADOCK, POTTER, NORTH, FEAD, and WIEST, JJ., concurred. SHARPE, J., did not sit.